ROBERT CENTER, The (ATLANTIC & P. GUANO CO. v.).   See Case No. 630.

ROBERT F. STOCKTON, The (EDWARDS v.).   See Case No. 4,297.

---

## Case No. 11,890.

### The ROBERT FULTON.

[1 Paine, 620.] 1

Circuit Court, D. New York.    Oct. Term, 1826.

COURTS—SUBMISSION TO JURISDICTION—CONFLICT OF JURISDICTION—ADMIRALTY—LIENS—MATERIALS FURNISHED.

1. A vessel was libelled in the district court for materials furnished. The claimants stated in their claim, that they had attached the vessel for materials furnished, in a state court, under the acts of the state of 1798 [Laws N. Y. vol. 4. p. 295] and 1817 [Laws N. Y. 1816–1818, p. 49], the day before the libel was filed, and prayed the advice and protection of the court in regard to their priority, under the attachment, and if the vessel should be decreed to be sold, that they might be first paid.   Held, that this was not a submission by the claimants to the jurisdiction of the court, but that they were entitled to their election to proceed in the other court.

[Cited in The Stephen Allen, Case No. 13,361; The Taranto. Id. 13,751; Litch v. The George Law, Id. 8,223; Johnson v. Bishop. Id. 7,373; The J. W. French, 13 Fed. 920.]

2. The sheriff having attached the vessel, under the process of the state court, it was held that the marshal could have no authority to take it out of his possession, but should have so returned, to prevent a conflict of jurisdiction.

[Cited in The Celestine, Case No. 2,541; The Oliver Jordan. Id. 10,503; Taylor v. Carryl. 20 How. (61 U. S.) 600; Lewis v. The Orpheus, Case No. 8,330; The Circassian, Id. 2,721; Johnson v. Bishop, Id. 7,373.]

[Cited in Keating v. Spink, 3 Ohio St. 126.]

3. The district courts have a general admiralty jurisdiction in suits by material men in rem. In cases of foreign ships, or ships of another state, the maritime law gives the lien. But in cases of domestic ships, no lien is implied: but if the local law gives a lien, it may be enforced in the district courts.

[Cited in The Stephen Allen. Case No. 13,361; The Gustavia, Id. 5,876; The Ware, Id. 17,-

---

1 [Reported by Samuel Blatchford, Esq.]                    1 [Reported by Elijah Paine, Jr., Esq.]

.297; The Calisto, Id. 2,316; The Harriet, Id. 6,097; The Marion, Id. 9,087; Jenkins v. The Congress, Id. 7,264; The Harvest, Id. 6,175; The Alida, Id. 199; Shannon v. The Angelique, Id. 12,705; Crapo v. Allen, Id. 3,360; New Jersey Steam-Nav. Co. v. Merchants' Bank, 6 How. (47 U. S.) 390; The Richard Busteed, Case No. 11,764.]

[Cited in Corey v. Ripley, 57 Me. 70.]

4. When the district courts and state courts have a concurrent jurisdiction in rem, the right to maintain the jurisdiction attaches to that tribunal which first exercises it, and takes possession of the thing.

[Cited in The Florenzo, Case No. 4,886. Distinguished in Wall v. The Royal Saxon, Id. 17,093. Disapproved in Ashbrook v. The Golden Gate, Id. 574. Cited in Blake v. Alabama & C. R. Co., Id. 1,493; Re Brinkman, Id. 1,884; Bruce v. Manchester & K. R. R., 19 Fed. 344.]

[Cited in Taylor v. City of Ft. Wayne, 47 Ind. 282; The Tom Bowling v. Hough, 5 Blackf. 190.]

5. Difficulty as to the mode of obtaining satisfaction of a judgment under the laws of New-York, for materials furnished a vessel. The proper mode is by a sale of the vessel, under an execution against her, issued on the judgment.

[6. Cited in Rogers v. Currier, 79 Mass. 134, to the point that statutory liens, which give a priority of payment to one class of creditors over another, are stricti juris, and are not to be extended beyond the clearly-expressed intent of the legislature.]

This was an appeal from a decree of the district court of the United States for the Southern district of New-York.

The ship Robert Fulton was attached in the court below, on a libel, filed by Francis H. Nicoll and Henry W. Nicoll, the respondents, on the 11th day of May, 1826, praying for the condemnation and sale of the vessel, to satisfy their demand for materials furnished by them to the amount of 5,981 dollars 42 cents, in the necessary repairs of the vessel. Twenty-seven distinct claims were put in for materials and labour furnished, in repairing the vessel, and amounting in the aggregate to 73,791 dollars 66 cents.

The claim of the appellants, William Wheelwright and Charles I. Johnson, stated, that they had furnished the vessel with materials to the amount of 2,967 dollars and upwards; and that the vessel was now in the custody of the sheriff of the city and county of New-York, by virtue of a warrant of attachment, issued by the Honorable John T. Irving, first judge of the court of common pleas of the said city and county, on the 10th of May, 1826, under the act of the state of New-York, entitled "An act authorizing the arrest of ships or vessels for debts contracted by the master, owner, or consignee, for and on account of such ships or vessels in this state," on the petition of the claimants, stating their demand; that the warrant was executed and returned the same day, and previous to the filing the libel in this suit. The claimants, to the end that they might obtain relief in the premises, prayed the advice and protection of the court, in regard to their priority of claim, in virtue of the said attachment; and that if the Robert Fulton should be condemn-

ed under a decree of the court, the proceeds of the sale might be first applied in payment of the claimants' demand and costs, and for other relief. The claim of Edwin Bergh and Beach Ivers stated, that on the 11th of May, 1826, they had attached the vessel, under the act of the state, and that she was in the custody of the sheriff; that she was a domestic ship, and the supplies for which she was libelled, were furnished in the port of New-York. They therefore prayed the court to preserve all their rights and priorities, and in the event of a sale, that the vessel should be sold subject to the claimants' lien and attachment.

The court below decreed, that all the claimants, except Bergh & Ivers, and Birkbeck & Co., and Abeel & Dunscomb, (who had filed claims similar to that of Bergh & Ivers,) had by their respective claims, duly submitted themselves to the jurisdiction of the court; and that the proceeds of the sale of the vessel should be paid over by the clerk in the following manner: 1st. The costs of the officers of the court, and of the proctors of the libellants and claimants. 2d. All the demands of the libellants and claimants, if the proceeds should be sufficient; but if not sufficient, then the libellants and claimants respectively, such amount pro rata, on their demands, as the proceeds would suffice for; and in case the said Bergh & Ivers, Birkbeck & Co., and Abeel & Dunscomb should not elect to receive their proportions, that the clerk should pay the same to the purchaser of the vessel, and they be at liberty to pursue their claims in the court of common pleas, for the whole or residue of their demands, according as they should elect to receive or not their said dividends. [Case unreported.] From this decree the claimants, Wheelwright & Johnson, appealed.

H. Wilkes and E. Wilkes, for appellants.

J. O. Hoffman, for respondents.

THOMPSON, Circuit Justice. The material inquiry in this case is whether the appellants, by their petition and claim presented to the district court, have so far submitted to the jurisdiction of that court, as to be deemed to have waived all rights acquired by virtue of their attachment against the ship, under the laws of this state. Act 10th August, 1798, and the amendment, 28th February, 1817. By these laws, all ships or vessels built, repaired, or equipped in this state, whether owned by residents or non-residents therein, are made liable for all debts contracted on account of any work done, or any supplies or materials furnished by any mechanic, tradesman, or others, towards the building, repairing, fitting, furnishing, or equipping the same. And such debts are made a lien on the vessel, and declared to have preference to all other debts due and owing from the owner thereof, except mariners' wages. And any person or persons whose demands amount to one hundred dol-

lars, may apply to a judge, and make oath to their account, upon which the judge is authorized to issue his warrant, directed to the sheriff, commanding him to attach, seize, and safely keep such ship or vessel. And upon the return of the attachment, the act directs what further proceedings are to be had. On the 11th of May, 1826, the respondents filed their libel in the district court, against the ship Robert Fulton, on a claim for materials furnished in repairing the ship; and the usual process of monition and attachment was issued to the marshal, who thereupon returned, that he had attached the ship; and such further proceedings were thereupon had, that the vessel was ordered to be sold by the marshal, and the money brought into court, and to be distributed towards satisfying the several claims that had been put in. By the petition and claim of the appellants, it appears, that on the 10th of May, 1826, the day before the libel of the respondents was filed, an attachment was issued by the first judge of the court of common pleas of the city and county of New-York, against the said ship, on the application of the appellants, under the state laws above referred to, which attachment was duly served by the sheriff, on the said 10th of May, and before the filing of the libel. And the appellants pray to have their priority of claim in virtue of the attachment preserved; and that if the ship should be condemned by a decree of the court to be sold, that the proceeds of such sale may be first applied to their claim. There were several other claimants, who, on the same day the libel was filed, but whether before or after, does not appear, had procured attachments to be issued under the state law, by virtue of which the vessel was held under the custody of the sheriff; and they also pray the court to preserve their rights and priorities acquired by the attachments. And the decree of the district court, with respect to these latter claimants, leaves it at their election to accept the pro rata distribution of the proceeds of the vessel, or to proceed in the court of common pleas, under their attachments. But with respect to the appellants, no such election is given; and they are put on the same footing, with respect to their claim, as those who had not procured any attachment under the state law.

I do not perceive the ground upon which this distinction was made by the district court. The assertion of the right and priority acquired by the appellants, under their attachment, is in substance, although not precisely in form, the same as the others. And indeed, if any priority was acquired by proceedings under the state laws, the appellants had secured it, for theirs was the first attachment taken out and executed. This priority might undoubtedly be waived if the appellants had chosen to come into the district court, and unreservedly submit their claims to that court. But I do not discover that they have so done. The decree asserts, that all the claimants, except Bergh & Ivers, Birkbeck & Co., and Abeel & Dunscomb, had, by their several and respective claims, duly submitted themselves to the jurisdiction of the district court. This appears to me to be a misapprehension, or an erroneous construction of the petition and claims of the appellants. They appeared, as they were bound to do, and set forth their claim, and prayed the protection of the court, in regard to the priority, by virtue of their attachment. The district court appears not to have noticed this allegation, nor to have decided whether the appellants had acquired any priority or not.

The case as it now appears is certainly involved in some difficulty. And I am unable to account for the returns, which have been made by the sheriff and the marshal upon the process issued to them respectively. If the sheriff, by virtue of his warrant, had attached and taken into his possession, the ship, on the 10th of May, as he has returned, it is in no way explained how the marshal could the day after seize and take into his possession the same vessel, and proceed to sell the same, under the orders of the district court. The right and authority of the sheriff, under the process directed to him, to attach the vessel, cannot be questioned, and if he had so done, the ship was in the custody of the law, and the marshal could certainly have had no authority to take it out of the possession of the sheriff. If he found the vessel held by the sheriff under his attachment, he should have so returned to the district court upon his process; and all further proceedings of the district court would have been arrested, and no conflict of jurisdiction could have arisen. The proceedings were in rem, and the sentence of the court must act upon the thing itself, and could not be executed, unless possession of it was taken. It is the necessary result of proceedings in rem, that the thing in litigation must be placed in the custody of the law; it must be in the possession or under the control of the court. [Jennings v. Carson], 4 Cranch [8 U. S.] 23. The district court is bound as much by these state laws as the state tribunals, and must give relief in conformity to them: And indeed in the present case the whole authority of the court is derived from the state laws. This was a domestic vessel, the owners residing here. The district court as a court of admiralty has a general jurisdiction in suits by material men in rem. But when the proceedings are to enforce a specific lien, such lien must be established in the particular case. Where the claim is against a foreign ship, or a ship in the ports of a state to which she does not belong, the general maritime law gives a lien on the ship, which may be enforced in the district court. But where the repairs or necessaries have been made or furnished in a port or place to which the vessel belongs, the case is governed by the local law of the state; and no lien is implied unless given by that law. And if the local law gives a lien, it may be enforced in the dis-

trict court; otherwise not. This was the doctrine of the supreme court in the case of The General Smith, 4 Wheat. [17 U. S.] 438. That the state tribunals had authority also to enforce the lien in the present case, is very certain from the express provisions of the law. There was then a concurrent jurisdiction in the two courts; and the proceedings under the state authority were in the nature of proceedings in rem. And the right to maintain the jurisdiction, must attach to that tribunal which first exercises it, and takes possession of the thing in litigation. This course is indispensable, in order to avoid a clashing of jurisdiction.

So far as respects the appellants, they had made their election, as they had a right to do, to proceed in the state court to enforce their lien; and whatever rights they had thereby acquired, could not be taken away by the district court against their consent: And if, as I consider it, the claim and petition of the appellants was an assertion of that right, the court erred in not leaving them to prosecute their claims in that court, or at all events, giving them the election, as was done with respect to others, who had taken out attachments under the state laws. Whether the appellants have acquired any priority in the satisfaction of their claim, by virtue of the attachment sued out by them, is a question not necessary here to be decided. That is a question for the state court. The mode and manner of proceeding under the state law, after the return of the attachment, in order to obtain satisfaction of the claim when established, is, perhaps, not free from some difficulty, as was suggested by the supreme court of this state, in the case of Murray v. Fitzpatrick, 3 Caines, 42, which came up on a writ of error from the mayor's court of New-York, on a judgment obtained on proceedings under this law; and one of the grounds urged for reversing the judgment was, that it could not be executed. In answer to which, the court said, that was a point to be determined by the court below. If the judgment was such as the law prescribed, the court could not say it was erroneous, because there might be a difficulty in its execution. I do not mean to be understood as concurring in the intimation thrown out in the case I have cited, that the judgment is to be enforced by the sheriff's keeping the property until the costs and damages are paid. This was an obiter suggestion only. This course might defeat the judgment altogether. For unless the owners come in voluntarily and redeem the property, it might be left to perish in the hands of the sheriff. A statute never ought to receive a construction which may render it nugatory, if susceptible of any other. And I do not perceive any objection to obtaining satisfaction by sale of the thing attached, under an execution issued on the judgment. The third section of the act authorizes the court after judgment by default or issue joined, to refer the accounts and demands to referees, as in cases of ref-

erence in other causes, under the act of the 27th of February, 1788 (1 Vol. R. L. 515), and by which act judgment is directed to be entered by the court for the sum reported due to the plaintiff. And whenever judgment is obtained, execution may be issued thereupon. 1 Vol. R. L. 502 (Act 2d April, 1813). The venditioni exponas, or execution, however, in cases under that act, would be restricted to the thing attached.

These observations have been made, not because they were called for in the present state of the case before this court, but to guard against an inference, that I supposed there would be some real difficulty in obtaining satisfaction of the judgment in the state court. But I again observe, that that is not a question to be decided here. If the appellants have come into this court for the purpose of setting up their right to prosecute their claims in the state court, under the attachment then taken out, and have established such right, the mode and manner of doing this, and the effect and operation of the state law upon such claim, must be submitted to that tribunal. If they were to be understood as having submitted to the jurisdiction of the district court, and as now setting up their claim to priority of satisfaction, out of the proceeds of the vessel now in that court, it would have then become necessary for this court to give a construction to that act, so far as relates to any priority acquired under the attachment. But as I understand the appellants to deny ever having submitted to the jurisdiction of the district court, and as I think the proceedings in this case do not show that they have, the decree of the district court, so far as it relates to the appellants, must be reversed, and the libel as to them dismissed with costs; to the end that they may be at liberty to prosecute their claim in the state court, under the attachment sued out by them, as set forth in their petition and claims filed in the district court.