Hoffman, J.
I am satisfied that, as to the parties who resorted to admiralty before the present suit, I have no right to interfere., I could not aid a receiver, by a writ of assistance, to take the vessel out of the custody of the marshal; and the appointment of a receiver would be so far nugatory. Such parties could not be enjoined from proceeding in the District Court. (2 Paige, 404; 7 Cranch, 278; 4 id. 179.)
In relation to the claim of Parrott, there is the embarrassment, that he has a legal claim enforced by attachment in the Supreme Court before this suit was commenced. I think that his rights must first be settled in the District Court, or the Supreme Court. If he submit his claim as holding a lien by the local law to the former, it can be there adjudged. His possession, through the sheriff, appears to have been subsequent to that of the marshal’s. Upon a condemnation and sale he could intervene. (The Ship Robert Fulton, 1 Paine’s Rep. 620; The Angelique, hereafter cited.) But by the 42d section of the statute, (2 R. S. 500,) he could not proceed in the state court while the vessel was under seizure upon process from the District Court. If his lien has been duly preserved under the act of 1855, it is plain that it must be protected in this, or any other state court, according to its legal effect. Although the Supreme Court would, I suppose, discharge his attachment his lien would be protected through a receiver here.
I proceed with the case upon the assumption that the District Court has a jurisdiction which it will exercise, and has possession of the steamboat.
But weighty reasons present themselves for granting a receiver, with modified authority, if it can be lawfully done, and will be effectual for the abridgment of litigation, and the attainment of *621 justice. Here are four mortgagees, and several judgment and execution creditors, besides the libellants and attaching creditors, all contesting some claims, and scarcely one admitting fully any claim prior to his own. Will a receiver, appointed by this court, contribute to the proper settlement of this mass of litigation? Can the court, on this complaint and these affidavits, appoint one?
As to the first question, I think it essential to understand to what extent the Court of Admiralty will examine and determine these numerous and complicated claims, and upon what principle?
In the case of the Neptune, (3 Knapp, 94,) the Privy Council decided, that a material man had no lien on a vessel for materials furnished in England, nor subsequently upon the proceeds of a sale upon condemnation.
A mortgagee had taken possession before the process had issued out of the Court of Admiralty. The court below decreed in favor of material men. The Privy Council overruled the decision, and held that the mortgagee was entitled. “ The court held the balance of the proceeds, in mum jus habentium.'’
But as I understand the law in our country, where a state law gives a material man a lien, the Admiralty Court enforces it, although, according to its own process, (4 Wheaton, 438; 7 Peters, 324; 1 Story, 72; Davis v. New Brig, Gilpin’s Rep. 414; id. 537; and cases cited Rule 12 in admiralty.) I gather from the authorities, that a distribution of remnants in a Court of Admiralty will only be made among such as have a lien upon the vessel, suable in Admiralty, or have a lien precedently and legally fixed. Hence all attaching creditors, to whom a lien is given by a state law (as it is in our state) may apply for a distribution; and this rule is recognized in the case of the Robert Fulton, (1 Paine, 620.) In numerous instances, also, mortgagees, at least if they have taken possession, have been allowed to intervene, and have their rights adjusted in the Admiralty Court, for the proceeds of a sale in whole, or for remnants. The case of the Neptune seems express as to this, and that of the New Brig, (Gilpin, 552,) is equally decisive. See also the Kosciusko, (11 Legal Observer, 38.)
As to remnants, the court will not permit the owner to take them, against a mortgagee, whose mortgage is invalid against creditors and purchasers for want of formality, but will settle *622 the claims of such a creditor and such a mortgagee upon equitable principles. (In rem, American Banner, October, 1855.)
But it is important to understand the decision of the learned and experienced Judge of this district, upon this subject. In the case of the Angelique, the matter was closely investigated.
As to material men, the learned Judge held, that as a lien was given them by local law, they could proceed in admiralty to enforce it. That the proceedings were to be governed by the practice and course of admiralty, not by the statutes or its analogies. That the state law will be observed as to all the conditions and provisions, attending the accruing or attaching, or determination of the lien. And that the Admiralty Court will enforce and carry out the lien as to priority of payment, in the same way as if it had been one under the maritime law. That only bottomry bonds and sailors’ wages had a preference under such law over all others; and that material men, &c., took priority in the order of the arrest of the property subject to their liens, and not pro rata, nor in the order of their claims accruing.
With respect to mortgagees of the vessel, he held in the opinion first delivered, that a mortgage, being an incumbrance or positive hypothecation of the vessel, is paramount in privilege to liens acquired subsequently. The exceptions are the rights of bottomry holders and seamen. A similar doctrine was laid down by his Honor in the case of the Kosciusko. (11 Legal Observer, 38.)
The case was again brought before him, and he decided, that the court could not compel mortgagees to come in and take satisfaction of their mortgages; that it had no power to adjust a scale of equities between numerous suitors presenting distinct interests; and that it had no chancery power to compel creditors to yield legal rights, and give place to claims clothed with no more than an equitable character.
That the mortgagees had not submitted to the court, and the result in the case was, that the lien remained unaffected by the marshal’s sale:
In the case of the Steamboat Hendrick Hudson v. Cobb & Willard, claimants, before Judge Hall, (7 Month. Law Rep. 98, June, 1854,) the following points were decided, after a full examination of the case of the Angelique.
*623 That the custom of the lakes created a lien upon the vessel equivalent to a maritime lien, or privileged hypothecation.
That a common law mortgage, though recorded according to the law of the state, and filed under the Act of Congress, made prior to the accruing of such a lien, had no preference over it; but must be paid after such lien was discharged.
That a sentence and sale in admiralty wherever it had jurisdiction in rem, gave a perfect title to the purchaser against all the world; displaced every precedent or co-equal lien; and left the proceeds to be distributed and paid among rightful claimants." But it is consistent with this opinion, that if difficulties existed in adjusting such rights, which a Court of Admiralty could not satisfactorily meet, the proceeds, after satisfying the maritime liens, would be held by the court to be distributed by a proper tribunal.
Several instructive cases are cited to this point. The Portsea, (2 Hagg, 84;) the Exmouth, (Id. 88;) and the Flora, (1 Hagg, 298.)
In one, the proceeds were held subject to such an order as a court of common law or equity competent to settle the questions, might make. In another, the vessel had been seized by a sheriff, and was in his hands at the time that the warrant of arrest which issued from the admiralty, was executed; and the decree being satisfied, the surplus proceeds were paid over to the sheriff;
It is plain that, under such views, a receiver, who represented a mass of claimants under state laws, appointed by a court of competent jurisdiction, would present himself to the favorable consideration of a Court of Admiralty, and, I think, might urge strong reasons for a transfer of surplus funds to him, to be disposed of under the state laws, by a state tribunal. His union, also, with the marshal, in a sale, might be useful in attaining the most important object of making a perfect title.
And, again, upon the principles of Judge Betts, if the mortgagees do not intervene, and submit absolutely to the jurisdiction of the District Court, then the vessel would be sold, subject to their lien; and then I apprehend the lien would remain to be adjusted by a state court,
H, again, they do intervene, and submit, and are awarded a priority, it is done in opposition to the state law. A question may then be submitted to the District Court, whether, if a state court has obtained jurisdiction, in a suit commenced, as to such claim *624 ants, before they take any proceedings in the District Court, these claims should not be left to the state tribunal, and the state law.
I perceive, therefore, strong reasons, in every aspect of the case, for appointing a receiver, though with modified power.
Has the court the power to appoint one, under this complaint?
It is objected that the complainant has no right to file a complaint which, in truth, is one of foreclosure of a chattel mortgage. This objection is not tenable. I do not understand that the jurisdiction upon such a complaint is lost, although a sale, upon notice, has superseded the practice. (Hart v. Ten Eyck, 2 John. C. R. 100.)
It is, again, said that a subsequent mortgagee can only redeem-a prior mortgage, and cannot obtain a sale. That this proposition-is not universally true, is shown by the ease of The Western Insurance Company v. The Eagle Company, (1 Paige, 284.)
It is insisted that a receiver cannot be appointed over a prior mortgagee in possession, nor upon the opposition of a prior mortgagee.
Elmore, the mortgagee, who took possession on the 1st of September, 1855, does not oppose the application, as mortgagee. Shaw had not possession. And it has been repeatedly decided that a subsequent mortgagee may have a receiver where a prior mortgagee is not in possession, without prejudice to his rights. (Newman v. Newman, cited, 2 Br. C. R. 92, Betts’ ed. No. 7; Bryan v. Cormick, 1 Cox Ca. 422; Dalmer v. Dashwood, 2 Cox Ca. 378.)
I think there is no decisive objection to making the order for a receiver, with some qualifications as to the rights of the libellants in the District Court. The appointment of a receiver leaves all the rights of the parties to the action unprejudiced.
Justice Hoffman made an order which, exclusive of its recitals, reads thus:
It is ordered that Benjamin W. Bonney be, and he is, hereby appointed receiver of the said steamboat Alida, her tackle, apparel, and furniture, and of the rights, title, claims, and interests of all the parties in this action, other than the parties who have filed libels in the District Court of the United States, for the Southern District of Hew York, with the powers and modifications next expressed.
*625 That such receiver in no wise interfere with the possession of such vessel now had by the marshal of the United States, or with that of any purchaser upon any sale which may be made under a sentence or decree of the District Court of the United States, for the Southern District of Hew York.
That in the case of the possession of such marshal being superseded by course of law, such receiver do thereupon take and hold possession of the same without prejudice to the right of the Sheriff of the County of Hew York, or of the defendant Parrott, to apply for such possession under the process issued from the Supreme Court, upon the application of the latter for an attachment.
That such receiver give notice, by service of a copy of this order or otherwise, to such marshal, of his appointment as such receiver.
That such receiver be at liberty to intervene in the suit or suits now pending in such District Court, on behalf of the parties in this action, other than those who have filed libels in such court, setting forth their claims respectively upon such vessel, and her proceeds, if sold, with his own appointment, and to seek such sentence or order as the said court shall see fit to make.
That such receiver be at liberty to unite with the said marshal in any sale which may be made, under a sentence or decree of the said District Court, so as to transfer to the purchaser the right, title, and interest of all the several parties hereto.
An appeal was taken from that order. The General Term, held by Oakley, Ch. J., and Campbell and Slosson, J. J., on the 22d of December, 1855, affirmed the order in all things, with this modification : That the order appealed from should be so modified as to declare that if the receiver intervened merely, without bonding, then “ the intervention of the receiver in the suits so pending in said District Court, in pursuance of the liberty hereby given to him, shall not be construed as preventing the defendant, Prosper P. Shaw, from appearing in the said suits, and intervening therein for the protection of his own rights and interests, nor as withdrawing the rights and interests of any of the parties to this action, from the exercise of any jurisdiction which the said District Court may have acquired, and deem it necessary or expedient to exercise.”
Mr. Bonney, the receiver, having intervened in the case of John *626 E. Brower, libellant, in the District Court, an exceptive allegation was filed as to bis right, which was argued before Judge Betts, who sustained the intervention. In the case of Cornell v. The Alida, Judge Ingersoll made a similar decision. The receiver was held to be a proper representative of the mortgage, and execution creditors. Ultimately, the admiralty liens having been discharged out of the proceeds of a sale of the Alida, the surplus móneys were directed to be paid to the receiver, and the action in this court is now being prosecuted, to settle the various claims upon them.