STATE OF MISSOURI, to use of BRITTON A. HILL, Appellant, v. PHILIP C. TAYLOR et al., Respondents.

### February 26, 1877.

1. An execution creditor acquires a lien on the property levied on, by virtue of the levy; and subsequent proceedings in bankruptcy against the execution debtor in no way affect the rights of the execution creditor.

2. A State court has no power to order its sheriff to deliver to an assignee in bankruptcy of an execution debtor the proceeds of a sale made under an execution issued by it.

3. The United States Courts have no power to interfere with property in the possession of an officer of a State court, acting under its process and within its jurisdiction.

4. An officer who, rightfully and under proper process, obtains possession of the property of a judgment debtor, and who, though under order of his own court, on the application of a stranger to the proceedings, delivers to such stranger the proceeds of a sale of such property, does so on his own responsibility. The court has no power to make such an order.

Appeal from St. Louis Circuit Court.

*Reversed and remanded.*

*J. H. Wieting,* with whom are *G. M. Stewart* and *A. Binswanger,* for appellant, cited: Wilson *v.* City Bank, 17 Wall. 473; Clark *v.* Iselin, 21 Wall. 360; Freem. on Ex. 729, sec. 441; Eyster *v.* Gaff, 1 Otto, 521; Townsend *v.* Leonard, 3 Dill. 370; Thompson *v.* Moses, 43 Ga. 383; Fehley *v.* Barr, 66 Penn. 196; Bump's Bank., 7th ed., 195; Freem. on Judg., sec. 142; Younge *v.* Broxson, 23 Ala. 684; Wright *v.* Leclaire, 3 Clarke (Iowa), 221; Williams' Appeal, 9 Barr, 267, and cases cited; Dewey *v.* White, 65 N. C. 225; Henderson *v.* Richardson, 5 Ala. 349; Wetmore *v.* Conyngham, 1 Pet. 241; Ramson *v.* Young, 4 Ired. 133; Saunders *v.* Bridge, 3 Barn. & Adol. 95; Warmol *v.* Young, 5 Barn. & Cress. 660; Big. on Estop. 506, and cases cited; Finn *v.* Clark, 12 Allen, 522; Sauquer *v.* London, etc., Ry. Co., 32 Law & Eq. Rep. 338.

*Farish & Griffin,* for respondents, cited: Bump's Bank. 139, 194, 197, 275, 276; Jones *v.* Leach *et al.,* 1 N. B. R. 165; Sharman *v.* Howell, 40 Ga. 257; *In re* Schneph, N. B. R. 41.

Hayden, J., delivered the opinion of the court.

This was an action against the respondent Taylor, sheriff of St. Louis County, and the sureties on his bond, the petition alleging as a breach the failure of Taylor to pay to Hill, to whose use the suit is brought, the sum of $2,353.40, charged to have been received by Taylor in part satisfaction of a certain execution held by him in favor of Hill. It appears that on April 7, 1871, Hill recovered a judgment in the Circuit Court of St. Louis County against one Samuel S. Drukker for $3,717, and on the same day caused an execution to be issued to the respondent Taylor, who was then

sheriff of St. Louis County. The respondent Taylor, on April 8th, levied the execution on the right, title, and interest of said Drukker in and to certain personal property, consisting of such articles as are usually kept in a pawnbroker's shop. On April 12, 1871, Samuel S. Drukker and Simon S. Drukker, Jr., who were partners in the pawnbroker's business the property of which was levied on as just stated, filed their petition in bankruptcy in the United States District Court at St. Louis, and were subsequently adjudicated bankrupts. The sheriff took the property levied on into his possession, and advertised it for sale on April 24th. The writ was returnable on June 5, 1871. On April 24 and 25, 1871, by request and consent of both plaintiff and defendant in the writ, and in conjunction with A. Binswanger, receiver appointed by the United States District Court in the case of Samuel S. and Simon S. Drukker, bankrupts (so it appears from the return on the execution), the sheriff sold all the interest of both the Drukkers in the property levied on for $2,353.40, and received the money. On May 16, 1871, by order of the Circuit Court of St. Louis County, made May 12th, on the petition of Augustus Binswanger, receiver, and George J. Davis, assignee in the bankruptcy of the Drukkers, the sheriff turned over the money, less his costs and charges, to the assignee of the bankrupts.

On April 18th a bill in equity had been filed in the United States District Court by the Drukkers, against Hill and the sheriff, Taylor, and it was in this proceeding, on notice given to the defendants therein, that that court ordered that Binswanger, the receiver, "join Philip C. Taylor, sheriff, in the sale mentioned in the bill of complaint," and "that said sale be for the joint interests of the entire estate of both of said bankrupts, plaintiffs herein, and that the proceeds of said sale be held subject to the further order" of the District Court. On May 15, 1871, Binswanger, as receiver, made report to the District Court that he had joined the sheriff in making the sale; that as re-

ceiver he made a motion in the St. Louis Circuit Court, in which he was joined by the assignee, that the sheriff turn over the net proceeds of the sale to the assignee, which order was made by that court and the money turned over accordingly. This report was approved by the District Court.

On the trial a transcript of the record was put in evidence by the defendants, showing the proceedings in the District Court in the suit by the Drukkers against Hill and Taylor, by which it appeared that the object of the suit was to set aside the judgment in favor of Hill, on the ground that it was obtained by collusion between Hill and Drukker, with a view to give Hill a preference over the other creditors of Drukker; that the prayer was that the judgment might be declared void, and the sheriff restrained from selling, etc. This record shows that the case was finally decided in favor of the defendants, and the bill, after hearing and argument, dismissed at the cost of the plaintiffs. It also appeared from defendant's evidence that on February 23, 1872, the judgment obtained in the case of *Hill* v. *Drukker* was filed as a claim held by Hill against the estate of Drukker, in bankruptcy, but was on February 29th withdrawn, and the allowance canceled, as made by mistake; that on November 8, 1872, Hill made proof before the register of a claim against the bankrupts for $9,600, part of which was covered by the judgment; the proof, however, reciting the fact of the judgment and levy, and stating that Hill had sued the sheriff, and did not, by the proof, intend to waive his claim against the sheriff. On November 9, 1872, the register in bankruptcy made report on the application of Samuel S. Drukker for a discharge, in which the register stated that, the estate having been closed, and no excuse having been given for the laches in filing the claim for $3,600 at so late a date, he made no formal allowance of it, and reported the bankrupt entitled to his discharge. It appears that Drukker was discharged.

Eight instructions were asked by the plaintiff's counsel,

only two of which were given. It is not necessary to set them out. The court found for the defendants.

The single point on which this case turns is the validity of the order of the court below by which the sheriff was ordered to turn over to the assignee appointed by the United States District Court the proceeds of the levy which the sheriff had made under the execution in favor of Hill. By virtue of the levy, Hill un doubtedly acquired a lien on the property levied on, and the subsequent proceedings in bankruptcy could in no way affect his right. Nor did it make any difference that Hill knew that his debtor, Drukker, was insolvent. *Wilson* v. *City Bank*, 17 Wall. 473; *Clark* v. *Iselin*, 21 Wall. 360; *Marshall* v. *Knox,* 16 Wall. 559; *Eyster* v. *Gaff*, 1 Otto, 521. The legal title was in the officer by virtue of a levy made before any proceedings in bankruptcy, and the officer was not only entitled to hold the property as against the assignee in bankruptcy, but was bound to do so. If, indeed, there was any surplus remaining in the officer's hands after paying the execution debt and costs, or any right in the property levied on, other than that of the execution debtor, the assignee might possibly have been entitled to such residue. It is, no doubt, as a measure of precaution, and to provide for such contingencies, that the United States District Courts sometimes make orders similar to that made in this case, directing their assignees, or such other persons as are subject to their orders, to join in sales made by the sheriff. But the court below had, at the time of the filing of the petition in bankruptcy, full control of the process, and its officer, subject alone to its orders, had executed its process and had acquired a vested right in the property. *Thompson* v. *Moses,* 43 Ga. 383; *Fehley* v. *Barr*, 66 Pa. St. 196; Freem. on Ex., sec. 441; In re *Bernstein*, 2 Ben. 44; *Townsend* v. *Leonard*, 3 Dill. 370.

Under these circumstances it is difficult to account for the order of the Circuit Court of St. Louis County of date May

12, 1871. It appears that on that day the receiver and the assignee presented what is called a petition, and that, upon the mere presentation, though the money was not in court, but in the hands of the sheriff (the execution being returnable to the June term, 1871), and though no notice was issued to Hill, the Circuit Court ordered the sheriff to surrender the money to the assignee. What standing in that court the assignee or the receiver had, in the proceeding after judgment obtained before the return of the execution, that they could, by a simple motion, conclude the rights of Hill and deprive him of the proceeds of his lien, it is not easy to discover. The District Court had not attempted to make an order in the suit in which Hill and the sheriff were parties defendant in any way interfering with the sale by the sheriff, nor could it have made an order interfering with the sheriff's possession of the fund proceeding from the sale; and on the hearing the bill was dismissed. It appears, even, that the exclusive property in the goods levied on was in the defendant in the execution, and that the other parties had no interest in the stock.

The presumption was altogether in favor of the jurisdiction of the State court, not in favor of the jurisdiction of the court of the United States. The State court was a court of general and common-law jurisdiction, not a court of special and limited jurisdiction, like the courts of the United States. The courts of the United States derive their powers from statutory enactments, and the burden is on him who asserts their jurisdiction to prove it. "It is clear," said the Supreme Court of the United States, in *Wheaton* v. *Peters*, 8 Pet. 658, "there can be no common law of the United States. The Federal government is composed of twenty-four sovereign and independent States; each of which may have its local usages, customs, and common law. There is no principle which pervades the Union, and has the authority of law, that is not embodied in the Constitution or laws of the Union. The common law could be

made "a part of our Federal system only by legislative adoption." "It is a postulate of a State Constitution, which distinguishes it from the Federal," said Chief Justice Gibson, in *Kirby* v. *Shaw,* 19 Pa. St. 260, "that all the power of the people is delegated by it except such parts of it as are specifically reserved." The Circuit Court derives its authority from the full grant of judicial power contained in the Constitution of the State, and the presumption is in favor of its jurisdiction.

Again, where the officer of a State court, acting under its process and within its jurisdiction, secures possession of property, that property is subject to the action of the State court, and the courts of the United States have no power to interfere with the property so long as it is in the hands of the officer of the State court. Even if there is a residuary interest after satisfying the debt for which the officer of the State court holds the property, this fact does not entitle the United States court to interfere in any way with the possession of the officer of the State court. The possession of the State officer is complete and exclusive; until the process of the State court is executed or discharged, the property is not subjected to the process of the court of the United States. *Hagan* v. *Lucas*, 10 Pet. 400; *Peck* v. *Jenness*, 7 How. 612; *The Ship Robert Fulton*, 1 Paine, 620; *The Oliver Jordan*, 2 Curt. 414; *Taylor* v. *Carryl*, 20 How. 583; *Buck* v. *Colbath*, 3 Wall. 334.

The right of Hill in the property levied on was a lien of which the District Court had no power, on the facts of this case, to deprive him. Any order which that court made, approving the action of the assignee in obtaining the money, would not avail to deprive Hill of rights vested in him before the commencement of the proceedings in bankruptcy. Nor could the announcement to Hill by the sheriff of his intention to turn the money over to the assignee change the bearings of the case. Hill was entitled to stand on his legal rights. If the sheriff paid the money over to a stranger to

the proceedings, on the application of that stranger to the court, under the order of the court, the sheriff did so on his own responsibility. The action of the Circuit Court in making such an order was beyond its powers, as the case then stood. The money was in the hands of the sheriff as the results of the levy in favor of Hill, awaiting the return-day of the execution. The court acted beyond its authority, when, without a controversy, without contending parties, it thus interfered with the due course of its own final process. To say that, in doing so, it acted within its jurisdiction, is to say that, on application of a stranger, or of its own motion, the court may, at any time after the collection of money by the sheriff and before the return-day of the execution, divest the plaintiff in the execution of his rights, and bestow the money on a person who is not a party to the proceeding.

The judgment of the court below is reversed and the case remanded, with directions to proceed in accordance with this opinion. Judge LEWIS concurs; Judge BAKEWELL, having been of counsel, does not sit.